## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CHAD KIM AND DANAE KIM,

      **Plaintiffs,**

v.

                                             16-CV-1362 MCA/LF

ZUZANNA A. CZERNY, MAGDALENA Z.
CZERNY, AND PROGRESSIVE ADVANCED
INSURANCE COMPANY,

      **Defendants.**

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** is before the Court on *Defendants' Motion to Deny the Joinder of Jurisdiction Defeating Defendants and to Strike Plaintiffs' Improperly Filed First Amended Complaint* [Doc. 12] and *Defendants' Motion to Dismiss for Lack of Personal Jurisdiction* [Doc. 5]. The Court has considered the parties' submissions, including Plaintiffs' *First Amended Complaint for Personal Injuries* [Doc. 9], and the relevant law, and is otherwise fully informed.

For the following reasons, the Court **DENIES in part** and **GRANTS in part** *Defendants' Motion to Deny the Joinder of Jurisdiction Defeating Defendants and to Strike Plaintiffs' Improperly Filed First Amended Complaint* [Doc. 12]. Specifically, the Court **DENIES** the *Motion to Strike Plaintiffs' Improperly Filed First Amended Complaint* and **GRANTS** the *Motion to Deny Joinder of Jurisdiction Defeating Defendants*.

Further, the Court **GRANTS** *Defendants' Motion to Dismiss for Lack of Personal Jurisdiction* [Doc. 5].

## I.   Background

After a car accident in Tempe, Arizona in which they were injured, Plaintiffs filed a *Complaint* in the Second Judicial District Court on November 4, 2016 alleging that Zuzanna Czerny negligently operated a vehicle and that Magdalena Czerny negligently entrusted the vehicle to Zuzanna Czerny.  [Doc. 1-1]  Defendants removed the matter to this Court, and then filed a *Motion to Dismiss for Lack of Personal Jurisdiction* on December 21, 2016.  [Doc. 1; Doc. 5]  On January 13, 2017, twenty-three days after the filing of Defendants' *Motion to Dismiss for Lack of Personal Jurisdiction*, Plaintiffs filed a *First Amended Complaint*, in which Plaintiffs seek to add as defendants claims adjuster Britni Vickers ("Vickers") and John Doe Adjuster Mark (Last Name Unknown) ("Mark"), as well as new claims for "fraud and misrepresentation" and negligent misrepresentation.  [Doc. 9]

On January 27, 2017, Defendants filed a *Motion to Deny the Joinder of Jurisdiction Defeating Defendants and to Strike Plaintiffs' Improperly Filed First Amended Complaint*.  [Doc. 12]  Defendants maintain that the *First Amended Complaint* should be stricken because it was improperly filed after the twenty-one-day deadline for amendments of right under Federal Rule of Civil Procedure 15(a)(1)(b) and without leave of the Court under Federal Rule of Civil Procedure 15(a)(2).  [Doc. 12]

In their *Response* to Defendants' *Motion to Deny the Joinder of Jurisdiction Defeating Defendants and to Strike Plaintiffs' Improperly Filed First Amended*

*Complaint*, filed on February 21, 2017, Plaintiffs "concede that they did not first seek leave of the Court in filing their [First] Amended Complaint" and state that they had "justifiable cause" for this failure. [Doc. 19, pg. 3, n.1] They do not explain what "justifiable cause" lies behind the tardy filing. They also state that "Plaintiffs intend to file their *Motion for Leave to Amend* forthwith." [Doc. 19, pg. 3 n.1] Plaintiffs have not yet filed a motion for leave to amend.

In sum, Plaintiffs argue that the joinder of new defendants should be permitted, that such joinder destroys this Court's subject matter jurisdiction, and that the matter should therefore be remanded to state court under 28 U.S.C. § 1447(e) without reaching the personal jurisdiction question. [Doc. 19] Defendants argue that joinder should be denied, subject matter jurisdiction retained, and the matter dismissed for lack of personal jurisdiction. [Doc. 12; Doc. 5]

## II.    Discussion

### A. Rule 15

Defendants argue that the First Amended Complaint was not filed within the deadline set forth in Federal Rule of Civil Procedure 15(a)(1)(B), that is, within 21 days of service of Defendants' initial *Motion to Dismiss*. Defendants are correct. Defendants also correctly argue [Doc. 12, pp. 2-4] that, under these circumstances, the Curt must decide whether to grant leave to Plaintiffs to file the proposed amended complaint. Fed R. Civ. P. 15(a)(2). Nonetheless, rather than striking the *First Amended Complaint for Personal Injuries*, the Court determines that even if the Court were to consider it as a proposed amended complaint, the complaint would be futile. See *Foman v. Davis*, 371

U.S. 178, 182 (1962) (stating that absent a reason such as futility, the Court should freely grant leave to amend a complaint).  An amendment is futile if it would not survive a motion to dismiss.  See *Bradley v. Val-Mejias*, 379 F.3rd 892, 901 (10th Cir.2004).  As discussed below, amendment would be futile because Plaintiffs fail to state a claim against the proposed new defendants, making joinder futile, and even if additional claims are added against the current defendants, personal jurisdiction is lacking as to them.

## B.  The Court Will Address Joinder, then Personal Jurisdiction

The next question is whether to consider joinder, which implicates the Court's subject matter jurisdiction, or personal jurisdiction first.  The district court may exercise its discretion in deciding which issue to take up first.  *Cantor Fitzgerald, L.P., v. Peaslee*, 88 F.3d 152, 155 (2d Cir. 1996).  "Customarily, a federal court first resolves any doubts about its jurisdiction over the subject matter of a case before reaching the merits or otherwise disposing of the case."  *Id*.  This approach is grounded in "[a] State's dignitary interest."  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 586 (1999).  Thus, "[i]f personal jurisdiction raises 'difficult questions of [state] law,' and subject-matter jurisdiction is resolved 'as eas[ily]' as personal jurisdiction, a district court will ordinarily conclude that 'federalism concerns tip the scales in favor of initially ruling on the motion to remand.'"  *Id*. quoting *Allen v. Ferguson,* 791 F.2d 611, 616 (7th Cir. 1986).

Here, Plaintiffs' *First Amended Complaint* adds two defendants who are allegedly New Mexico residents.  [Doc. 9]  Because Plaintiffs are also New Mexico residents, joinder of these defendants will destroy the diversity of the parties on which this Court's

subject matter jurisdiction is based.  28 U.S.C. §1332.  Consequently, the Court will first take up the issues related to joinder, then address personal jurisdiction.

## C. The Court Will Not Permit Joinder of New Defendants

Here, the additions to the *First Amended Complaint* include both claims and parties, as Plaintiffs seek to add two claims and two defendants.  [Doc. 9]  Defendants object to the addition of "diversity destroying defendants," but do not argue against the addition of the new claims for fraud/misrepresentation and negligent misrepresentation. [Doc. 12]  Defendants' arguments are based wholly on 28 U.S.C. § 1447(e) ("If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.").  "But because Section 1447(e) is only concerned with the joinder of non-diverse parties post-removal, it is applicable only in so far as the proposed amended complaint seeks to join non-diverse parties."  *Culver v. Lithia Motors, Inc.*, No. CV 15-669 MCA/SCY, 2016 WL 7426587, at *5 (D.N.M. May 12, 2016), *report and recommendation adopted,* No. CV 15-669 MCA/SCY, 2016 WL 7447552 (D.N.M. July 19, 2016).  "In other words, a court's review of proposed amendments containing new allegations regarding current defendants is still governed by Rule 15."  *Id*.

Despite Plaintiffs' failure to expressly state their intent, a reading of the proposed amended complaint as a whole reveals the Plaintiffs intend to add claims against the Progressive Advanced claims handlers in their capacities as agents of Progressive Advanced, rather than in their individual capacities.  *Farm Bureau Prop. & Cas. INS. Co. v. Hale*, No. 1:14-CV-00527-WJ/WPL, 2014 WL 11512598, at *5 (D.N.M. Nov. 14,

2014) ("It is well-settled that insurance agents and adjusters may be sued in their individual capacity for breach of common law and statutory duties."); 4 Steven Plitt, *et al.*, Couch on Ins. § 56:11 ("An insurer is liable for the fraud of its agent when acting within the scope of his or her actual or apparent authority.").  This is because the headings for the new claims indicate that they are against Vickers and "Mark."  [Doc. 9]  However, the substantive portions of the new claims do not include any allegations against Vickers and "Mark" in their individual capacities.  [Doc. 9]  Instead, Plaintiffs allege that Vickers and "Mark" were "at all times relevant and material . . . employee[s] of Defendant Progressive Advanced Insurance Company and interacted with Plaintiffs Chad and Danae Kim on behalf of Defendants Zuzanna and Magdalena Czerny and Progressive Advanced Insurance Company."  [Doc. 9, ¶¶ 6, 7]  They also allege that Vickers and "Mark" are "manager[s], agent[s], servant[s], claim representative[s] and/or employee[s] of Defendant Progressive Advanced" and that they were "acting within the course and scope of [their] relationship with Defendant Progressive Advanced at all times herein to perform business for Defendant in the State of New Mexico through the claims handling of insurance policies in the State of New Mexico."  [Doc. 9, ¶¶ 14-17]  Finally, Plaintiffs allege that Vickers and "Mark" were "acting within the course and scope of [their] relationship with Defendant Progressive Advanced at all times herein to perform business for Defendant in the State of New Mexico through the claims handling of insurance policies in the State of New Mexico, subjecting Defendant Progressive Advanced to liability under the doctrines of vicarious liability and/or *respondeat superior.*"  [Doc. 9, ¶¶ 59, 62]  Moreover, in their pleadings, Plaintiffs state that the

claims are "against Progressive Advanced" and that "Progressive Advanced is vicariously liable" for the conduct of its agents.  [Doc. 19, pg. 6]

The Court will therefore construe Plaintiffs' *First Amended Complaint* to add new claims against Progressive Advanced—already a defendant—as well as to add new defendants.  *See* 27 Fed. Proc., L. Ed. § 62:170 (stating that "a party who has filed an original claim, . . . may join with such claim as many other claims as he or she has against the opposing party, regardless of their nature or consistency."); Rule 18(a) ("A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party.").

The Court turns next to the issue of whether Plaintiffs may join new defendants. Under 28 U.S.C. § 1447(e), a court may deny joinder of a party after removal, or permit joinder and remand to state court.  28 U.S.C.A. § 1447(e) ("If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.").  Although § 1447(e) provides no standards for joinder, Federal Rules of Civil Procedure 19 and 20 provide some guidance.  *See McPhail v. Deere & Co.*, 529 F.3d 947, 951 (10th Cir. 2008) (applying Fed. R. Civ. P. 19 and 20 to analysis of joinder under § 1447(e)); *Pacely v. Lockett*, No. 12-CV-152, 2013 WL 12136690, *4 (D.N.M. Mar. 20, 2013 (same).  *But see Mayes v. Rapoport*, 198 F.3d 457, 462 (4th Cir. 1999) ("Under Section 1447(e), the actual decision on whether or not to permit joinder of a defendant under these circumstances is committed to the sound discretion of the district court; thus, this decision is not controlled by a Rule 19 analysis.").  Thus, if a party is

indispensable under Rule 19, "Rule 19 requires the court either to join the party, in which case remand is necessary under § 1447(e), or to deny joinder, in which case Rule 19(b) also requires that the action be dismissed." *McPhail*, 529 F.3d at 951; *see* Fed. R. Civ. P. 19 (stating that "a person . . . must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: . . . impair or impede the person's ability to protect the interest; or . . . leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.").

If the party is not indispensable, joinder may be permissible under Rule 20(a)(2), which provides that :

> Persons. . . may be joined in one action if:
>
>> (A) any right to relief is asserted against them . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>>
>> (B) any question of law or fact common to all defendants will arise in the action.

*See Pacely*, 2013 WL 12136690, at *4. In considering joinder under Rule 20, "the district court typically considers several factors including whether the amendment will result in undue prejudice, whether the request was unduly and inexplicably delayed, and whether it was offered in good faith." *McPhail*, 529 F.3d at 952 (internal quotation marks, alterations, and citation omitted).

Similarly, when considering whether to permit joinder under § 1447(e), courts consider "the motivation for the joinder, whether the plaintiff was dilatory in seeking joinder, prejudice to the existing defendants if the joinder is permitted, prejudice to the plaintiff if the joinder is not permitted, judicial efficiency and economy, as well as other equitable concerns." 14C Wright & Miller, Fed. Prac. & Proc. Juris. § 3739 (4th ed.); *McDaniel v. Loya*, 304 F.R.D. 617, 640 (D.N.M. 2015) ("In deciding whether to grant leave to amend, courts must balance the defendant's interest in retaining the federal forum with the plaintiff's competing interest in avoiding parallel federal and state litigation. Courts consider whether the purpose of the amendment is to defeat federal jurisdiction, whether the plaintiff has delayed in requesting amendment, whether the plaintiff will be significantly injured if amendment is refused, and any other factors bearing on the equities." (internal quotation marks and citation omitted)). Thus, the analysis under § 1447(e) is similar to but broader than the analysis under either Rule 19 or Rule 20. *See Mayes*, 198 F.3d at 462 ("Section 1447(e) gives the court more flexibility than a strict Rule 19 analysis" (internal quotation marks and citation omitted)); *Casas Office Machines, Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 675 (1st Cir. 1994).

The parties dispute whether the concept of "fraudulent joinder" applies to the analysis under § 1447(e). [Doc. 21, pg. 7; Doc. 19, pg. 8] "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). "To establish fraudulent joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a

cause of action against the non-diverse party in state court." *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013) (alteration, internal quotation marks, and citation omitted). If fraudulent joinder is shown, "a district court can assume jurisdiction over a case [by]. . . disregard[ing], for jurisdictional purposes, the citizenship of certain nondiverse defendants, assum[ing] jurisdiction over a case, dismiss[ing] the nondiverse defendants, and thereby retain[ing] jurisdiction." *Mayes*, 198 F.3d at 461. "Since the fraudulent joinder doctrine justifies a federal court's *initial* assumption of diversity jurisdiction, it has no effect once the district court actually possesses jurisdiction—including after the case has been removed." *Id*. (Emphasis added.); *see Pacely*, 2013 WL 12136690, *4 n. 1 (noting that the Fourth and Fifth Circuit Courts of Appeal have held that the fraudulent joinder doctrine does not apply to a Section 1447(e) analysis).

This matter has already been removed to this Court. Hence, Defendant is not required to demonstrate fraudulent joinder in opposition to Plaintiffs' proposed joinder. However, in assessing joinder under § 1447(e), if fraudulent joinder is shown, it "should be a factor—and perhaps the dispositive factor—that the court considers in deciding whether a plaintiff may join a nondiverse defendant" after removal. *Mayes*, 198 F.3d at 463.

Although Plaintiffs invoke Rule 19 by stating that "claim handler[]s Vickers and 'Mark' are clearly necessary, and perhaps indispensable, to determining the extent of Progressive Advanced's vicarious liability for the conduct of its employees," [Doc. 19, pg. 8] Plaintiffs do not address the Rule 19 requirements for parties to be "joined if feasible." Instead, Plaintiffs argue that Vickers and "Mark" are "proper" parties under

Rule 20 because "common question of law and fact arise out of the same series of transactions or occurrences relating to: the motor vehicle accident; Progressive Advanced's New Mexico investigation of the same; and, its claim handlers' conduct and representations in administering the New Mexico claim."  [Doc. 19, pg. 7]  Defendants argue to the contrary that the claims "do not arise out of the same transaction [or] occurrence [because]" the claims against the Czerny defendants and the Progressive Advanced defendants, including Vickers and "Mark," "arose at different times, from wholly different conduct and involved completely distinct causes of action."  [Doc. 21, pg. 6]

However, Rule 20 provides that defendants may be added "if . . . any right to relief is asserted against them jointly, severally, or in the alternative."  Thus, "Rule 20 requires as a precondition to joinder that a right to relief be asserted against the party to be joined."  *Common Cause v. Fed. Election Comm'n*, 82 F.R.D. 59, 61 (D.D.C. 1979); 25 Fed. Proc., L. Ed. § 59:187 (stating that "joinder of an additional defendant would be improper where no right to relief has been asserted against that party in the operative complaint.").  Here, Plaintiffs' *First Amended Complaint* does not state a claim against Vickers and "Mark" individually.  Instead, they are named in their capacity as agents of Progressive Advanced.  Rule 20 is therefore unavailing to Plaintiffs.  *See Busby v. Capital One, N.A.*, 759 F. Supp. 2d 81, 88 (D.D.C. 2011) (stating that "although the plaintiff represents that she intends to assert certain claims against [the proposed defendant], the operative complaint does not contain any allegations supporting claims against that proposed defendant, . . .  Accordingly, because no right to relief has been

asserted against [the proposed defendant] in the operative complaint, joinder would be improper at this time.").

Here, the Court concludes that joinder of Vickers and "Mark" should be denied for the following reasons. First, Plaintiffs' *First Amended Complaint* was filed only two days past the twenty-one day deadline set out in Rule 15. Thus, in this sense it was not delayed unduly. However, Plaintiffs' explanation for the delay is that in December 2016 they became aware of "extensive, in-person contact" between the claims handlers and Plaintiffs. Plaintiffs' evidence of that contact belies this timeline. Indeed, the email correspondence between Plaintiffs and the claims handlers appears to have been forwarded to Plaintiffs' counsel in September, 2016, almost two months before the *Complaint* was filed, and, obviously, Plaintiffs themselves were aware of the correspondence at the time it occurred beginning in February, 2015 and continuing through September, 2016. [Doc. 19-1; Doc. 8-7 – 8-12] The email correspondence also references an in-person meeting with "Mark" in March, 2016. [Doc. 8-10] This evidence indicates that Plaintiffs and their counsel were aware of Vickers and "Mark" well before Defendants' *Motion to Dismiss for Lack of Personal Jurisdiction*, and even the *Complaint*, was filed. *See State Distributors, Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir. 1984) ("Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial.").

Second, Plaintiffs are not prejudiced by a denial of joinder. Plaintiffs argue that "[j]oinder and remand [are] proper in this case for purposes of efficiency, comity, and to

avoid prejudice to all parties involved." [Doc. 19, pg. 5] For instance, they argue, "[d]enying joinder [of the claims handlers] would require Plaintiffs to litigate their negligence, fraud, and misrepresentation claims against Progressive Advanced without the agent-adjusters, by and through which Plaintiffs contend Progressive Advanced is vicariously liable." [Doc. 19, pg. 6] As discussed above, the substance of the added claims indicates that their target is Progressive Advanced, rather than Vickers and "Mark." That being the case, Plaintiffs do not explain why it is necessary to name the adjusters *as defendants* in order to state a claim against Progressive Advanced, their alleged employer. *See* 4 Steven Plitt, *et al*., Couch on Ins. § 56:11 ("An insurer is liable for the fraud of its agent when acting within the scope of his or her actual or apparent authority."); *cf. Neill v. State Farm Fire & Cas. Co.*, No. CIV-13-627-D, 2015 WL 4629304, at \*3 (W.D. Okla. Aug. 3, 2015) (holding that "denial of the amendment will [not] cause significant injury or prejudice to [the p]laintiffs" because "[t]he same claims which [the p]laintiffs propose[d] to add against [the new defendant] are presented in their existing pleading as vicarious liability claims against State Farm. If [the p]laintiffs' claims are proven in this case, a second suit would be unnecessary because [the p]laintiffs could not obtain a second recovery of the same damages.").

Similarly, Plaintiffs contend that "[d]enial of joinder would also, ultimately, result in Plaintiffs having to refile their claims in [s]tate [c]ourt." [Doc. 19, pg. 6] However, this argument conflates joinder of parties with addition of new claims. Since, as discussed above, the Court construes the complaint to add new fraud and

misrepresentation claims against Progressive Advanced, there will be no need to refile these claims in state court.

Because Plaintiffs' attempt to add new defendants was not pursued in a timely manner and appears calculated to destroy diversity, and because denial of joinder would not prejudice Plaintiffs nor unnecessarily tax judicial resources, the Court will not permit joinder of defendants Vickers and "Mark." *See Culver*, 2016 WL 7426587, at *5 (stating that factors to consider are "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities" (internal quotation marks and citation omitted)).  Without joinder of these defendants, diversity of the parties—and therefore this Court's subject matter jurisdiction—is preserved.  28 U.S.C. § 1332.

## D.  The Court Will Dismiss the Action for Lack of Personal Jurisdiction

Having concluded that subject matter jurisdiction is preserved, the Court turns to Defendants' *Motion to Dismiss for Lack of Personal Jurisdiction*.  [Doc. 5]  "Personal jurisdiction is established by the laws of the forum state and must comport with constitutional due process."  *Fireman's Fund Ins. Co. v. Thyssen Mining Contr. of Can.*, 703 F.3d 488, 492 (10th Cir. 2012).  "[A] State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has certain minimum contacts with the State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (internal quotation marks, alteration, and citation omitted).  Under New Mexico's

long arm statute, "[a]ny person, whether or not a citizen or resident of this state, who in person or through an agent does any of the [following] acts . . . thereby submits himself . . . to the jurisdiction of the courts of this state as to any cause of action arising from . . . the transaction of any business within this state; [or] . . . the commission of a tortious act within this state." NMSA 1978, § 38-1-16. New Mexico has "construed the state long-arm statute as being coextensive with the requirements of due process." *Sproul v. Rob & Charlie's, Inc.*, 2013-NMCA-072, ¶ 8, 304 P.3d 18 (citation omitted); *Fireman's Fund*, 703 F.3d at 492-93.

Personal jurisdiction may be either specific or general. Specific jurisdiction applies only when the suit "arises out of or relates to the defendant's contacts with the forum state." *Daimler AG*, 134 S. Ct. at 754 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984)). Put another way, a defendant has sufficient minimum contacts with the forum state to support the exercise of specific jurisdiction if two requirements are met: (1) "if the defendant has 'purposefully directed' his activities at residents of the forum," and (2) "the litigation results from alleged injuries that 'arise out of or relate to' those activities." *OMI Holdings Inc., v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

General jurisdiction, in contrast, is exercisable when "a foreign corporation's continuous corporate operations within a state are so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Daimler AG*, 134 S. Ct. at 754 (internal quotation marks and citation

omitted).  "A court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id*.  For a corporation, "the place of incorporation and the principal place of business are paradigm bases for general jurisdiction." *Id.* at 760.  "These bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Id.*

When a defendant challenges the court's jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction exists. *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (citations omitted).  In the preliminary stages of litigation, this burden is "light," and prior to trial the "plaintiff is only required to establish a prima facie showing of [personal] jurisdiction." *Doe v. Nat'l Med. Serv.*, 974 F.2d 143, 145 (10th Cir. 1992).  The plaintiff may make the required prima facie showing by coming forward with facts, via affidavit or other written materials, that would support jurisdiction over the defendant if true. *See OMI Holdings*, 149 F.3d at 1091.  Only the well-pled facts of a plaintiff's complaint, however, as opposed to mere conclusory allegations in pleadings or other materials, must be accepted as true. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).  Moreover, a plaintiff's jurisdictional allegations are not automatically accepted as true when contradicted by affidavit, although if the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor. *See Wenz*, 55 F.3d at 1505.

## 1. Defendants Zuzanna and Magdalena Czerny

In the *First Amended Complaint*, Plaintiffs allege that "Defendant Zuzanna A. Czerny [and Defendant Magdalena Z. Czerny] at all times relevant and material hereto, [are] resident[s] of the City of Phoenix, County of Maricopa, State of Arizona." [Doc. 9, ¶¶ 4, 5]  They also state that "the accident which forms the basis of the instant lawsuit occurred within the County of Maricopa, State of Arizona." [Doc. 9, ¶ 9]  They included no other allegations related to personal jurisdiction over the Czerny defendants.  Neither do Plaintiffs make any argument related to the Czerny defendants in their *Response* to Defendants' *Motion to Dismiss for Lack of Personal Jurisdiction*. Plaintiffs therefore have not met their burden to make a prima facie showing of sufficient contacts with New Mexico to support jurisdiction over the Czerny defendants.  *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995) ("The plaintiff bears the burden of establishing personal jurisdiction over the defendant."); *Neogen Corporation v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir.2002) (A *prima facie* showing is made "by establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." (alterations, internal quotation marks, and citations omitted)).  The Czerny defendants will be dismissed.

## 2. Defendant Progressive Advanced

Plaintiffs next argue that Progressive Advanced "knowingly, purposely, and intentionally directed" "business contacts and commercial activities" at New Mexico when it "investigate[d]; manage[d]; and administrate[d] Plaintiffs' accident claim through

a New Mexico agent located at a New Mexico Progressive Advanced facility." [Doc. 8, pg. 1] More specifically, Plaintiffs argue that Progressive Advanced 1) "h[e]ld[] itself out as an entity doing business in New Mexico" and 2) transacted business in New Mexico when New Mexico-based claims adjusters managed the claim. [Doc. 8, pg. 4-5] *See* § 38-1-16 ("Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the [following] acts . . . thereby submits himself . . . to the jurisdiction of the courts of this state as to any cause of action arising from . . . the transaction of any business within this state; [or] . . . the commission of a tortious act within this state."). In addition, Plaintiffs argue that their claims lie "in the wake" of Progressive Advanced's "activities directed toward the forum [s]tate," i.e., the handling of Plaintiffs' coverage claim. [Doc. 8, pg. 5] *See Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996) ("In assessing contacts with a forum, courts have considered such factors as: (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.").

Plaintiffs attach as evidence of Progressive Advanced's continuous and systematic contacts with New Mexico email correspondence which bears the Progressive logo, and in which Vickers' signature block states that she was acting "[o]n behalf of Progressive Advanced Insurance" from an Albuquerque address. [*See, e.g.*, Doc. 8-2, 8-7 – 8-12]

They also attach printouts from www.bloomberg.com purporting to show that Progressive Advanced Insurance is a subsidiary of Progressive Direct Holdings, which is a subsidiary of Progressive Corporation, [Doc. 8-3] and a print out from www.yellowpages.com purporting to show that a listing for Progressive Insurance has the same address as that shown in Vickers' email signature. [Doc. 8-3] Finally, they attach a print out of Vickers' LinkedIn profile showing her title as "Claims Generalist Intermediate, Progressive Insurance." [Doc. 8-6] They also point to these documents in support of their argument that Progressive Advanced transacted business in New Mexico by virtue of adjusting Plaintiffs' claim. [Doc. 8, pg. 4, 7]

As to Plaintiffs' assertion that Progressive Advanced has "continuous and systematic" contacts with New Mexico, Defendants counter with an affidavit by Michael R. Uth, Deputy General Counsel "for companies within the Progressive Group of Insurance Companies ('Progressive') including Progressive Advanced Insurance Company." [Doc. 5-2] In the affidavit, Uth asserts that

3. Progressive Advanced Insurance Company does not conduct business in the State of New Mexico and did not conduct any business in 2015.

4. Progressive Advanced Insurance Company does not currently pursue business activity in New Mexico or engage in business activity in New Mexico and did not in 2015.

5. Progressive Advanced Insurance Company does not currently sell goods or services, either directly or indirectly, in New Mexico and did not in 2015.

6. Progressive Advanced Insurance Company does not currently solicit business in New Mexico and did not in 2015.

[Doc. 5-2]

As to Plaintiffs' argument that Progressive Advanced transacted business in New Mexico by adjusting the claim here, Defendants argue that Progressive Advanced's claims adjusting activity occurring post-accident cannot serve as a basis for personal jurisdiction in New Mexico because it only occurred in New Mexico because Plaintiffs live here.  [Doc. 6, pg. 13]  They point to cases holding that "[c]laims adjusting activity in the [f]orum [s]tate related to a claim that occurred outside the [f]orum [s]tate simply does not constitute the required 'purposeful availment' required for personal jurisdiction."  [Doc. 13, pg. 7]  For example, in *Johnston v. American Family Mutual Insurance Company*, after their Wisconsin home was burgled and a claim submitted to American Family, the plaintiffs moved to Santa Fe.  No. CV 14-1043 WPL/SCY, 2015 WL 11111293, at *1 (D.N.M. Feb. 19, 2015).  They then sued American Family in a New Mexico court, "alleging claims for breach of contract, bad faith and violation of the New Mexico Unfair Claims Practices Act."  *Id*.  American Family removed the case to federal court.  *Id*.  "To establish purposeful availment, the [plaintiffs] rel[ied] upon American Family's actions in retaining [a local adjusting company] and sending its adjuster to their home in Santa Fe to inventory their property."  *Id*. at 2.  The court concluded that this contact was insufficient because it was the result not of American Family's purposeful acts, but of the plaintiffs' decision to move to Santa Fe.  *Id*. at *3.  It stated, "American Family retained the services of [the local adjuster] only because the [plaintiffs] relocated to New Mexico while their claim was pending.  American Family's actions do not demonstrate that it purposefully availed itself of the benefits and protections of New Mexico law."  *Id*.  Similar results were found in *Davis v. Am. Family*

*Mut. Ins. Co.*, 861 F.2d 1159, 1162 (9th Cir. 1988) ("The fact that American Family hired an adjuster who had an office in Montana . . . resulted solely from the fact that Davis returned to his home in Montana after the accident in the state of North Dakota. Unlike an insurance defendant whose activities are purposely directed towards participating in the forum state's insurance market, . . . American Family's activities in Montana were conducted for the sole purpose of fulfilling its obligation to adjust Davis' claim . . . . American Family's actions do not demonstrate a purposeful availment of the benefits and protections of Montana law.") and *Whittaker v. Med. Mut. of Ohio*, 96 F. Supp. 2d 1197, 1201 (D. Kan. 2000) ("If not for plaintiff's unilateral decision to move to Kansas, Medical Mutual would not have asked [Blue Cross Blue Shield Kansas (BCBSK)] to process her claims. Medical Mutual contacted B[C]BSK for the sole purpose of fulfilling its obligation to process plaintiff's claim.").

In *Johnston*, *Davis*, and *Whittaker*, the insurer hired an independent, local adjuster who had no preexisting ties to the insurer to adjust the claim. *See Davis*, 861 F.2d at 1160; *Johnston*, at *1; *Whittaker*, 96 F. Supp. 2d at 1201. Here, in contrast, Plaintiffs have presented evidence that Vickers and "Mark" either were or held themselves out to be employees of Progressive Corporation, the parent of Progressive Direct Holdings, itself the parent of Progressive Advanced.

Nevertheless, both of Plaintiffs' arguments are unavailing. Plaintiffs' evidence shows only that Vickers and "Mark" may be employees of Progressive Corporation, the parent corporation, and that they acted on behalf of Progressive Advanced in adjusting the coverage claim. Their status as employees of Progressive Corporation is immaterial

to whether Progressive Advanced has minimum contacts with New Mexico because the two entities are legally distinct. Generally, "the mere relationship of parent corporation and subsidiary corporation is not in itself a sufficient basis for subjecting both to the jurisdiction of the forum state, where one is a nonresident and is not otherwise present or doing business in the forum state." *Alto Eldorado P'ship v. Amrep*, 2005-NMCA-131, ¶ 32, 138 N.M. 607, 124 P.3d 585. However, where the plaintiffs "ma[k]e a prima facie case that [the corporate parent] did not simply own [the subsidiary, but instead] completely controlled it to the point where [the subsidiary] existed as little more than an instrument to serve [the parent's] . . . interests," the corporate parent's contacts may be imputed to the subsidiary. *Id.* ¶¶ 33-34; *cf. Weisler v. Cmty. Health Sys., Inc.*, No. CIV. 12-0079 MV/CG, 2012 WL 4498919, at *11 (D.N.M. Sept. 27, 2012) (stating that "[a]n exception to th[e general] rule exists, however, where circumstances justify disregard of the corporate entity, and in such cases, the contacts of the subsidiary may be imputed to the parent for purposes of establishing general jurisdiction over the parent."). "A court can disregard the corporate form and impute jurisdiction to a parent based upon its subsidiary's contacts when the subsidiary is simply an agent doing the business of the parent." *Weisler*, 2012 WL 4498919, at *11.

This general rule applies only to impute the subsidiary's contacts to the parent, not the other direction. *Vacation Travel Int'l, Inc. v. Sunchase Beachfront Condo. Owners Ass'n, Inc.*, No. CIVA 06CV02195 LTBCB, 2007 WL 757580, at *5 (D. Colo. Mar. 8, 2007) (stating that "[w]hile under some circumstances a subsidiary corporation's contacts may be imputed to a parent for the purposes of jurisdiction, the reverse is not true. The

Tenth Circuit rejects the proposition that 'because the court has jurisdiction over a parent corporation or dominating individual . . . it has jurisdiction over the alter ego corporation.'" quoting *Home–Stake Production Co. v. Talon Petroleum, C.A.,* 907 F.2d 1012, 1021 (10th Cir.1990)).  Thus, even if the Court accepts Plaintiffs' documentation as evidence that Vickers and "Mark" are employees of Progressive Corporation and that Progressive Corporation maintains offices in Albuquerque, thereby maintaining minimum contacts with New Mexico, those contacts may not be imputed to Progressive Corporation's subsidiaries, *i.e.,* Progressive Direct Holdings or Progressive Advanced. Without these minimum contacts, as in *Johnston*, the fact that Progressive Advanced adjusted the coverage claim in New Mexico is insufficient to exercise personal jurisdiction over Progressive Advanced.

To the extent Plaintiffs argue that personal jurisdiction over Progressive Advanced is proper based on the New Mexico Superintendent of Insurance's certification that he forwarded service of process to Progressive Advanced, the Court disagrees that this fact is sufficient.  [Doc. 8, pg. 2]  Plaintiffs attach a copy of a certificate by the New Mexico Superintendent of Insurance stating that

> a copy of a Summons, Complaint for Personal Injuries, and Court Annexed Arbitration Certificate to Defendant Progressive Advanced Insurance Company, was sent to Defendant PROGRESSIVE ADVANCED INSURANCE COMPANY on November 14, 2016 as provided in Section 59A-5-3l and 59A-5-32 NMSA 1978, and was received by said company on November 16, 2016 as shown by return receipt by Postmaster.

[Doc. 8-1]

Sections 59A-5-31 and -32 provide for service of process through the Superintendent for insurers authorized to "transact insurance" in the state. § 59A-5-31(A). Defendants maintain that Progressive Advanced is not registered to and does not "transact insurance" in New Mexico. [Doc. 13, pg. 3, 11] Other than the certificate, Plaintiffs provide no evidence that Progressive Advanced is in fact registered with the Superintendent of Insurance. In addition to § 59A-5-31, NMSA 1978, § 38-1-8 provides for service of process through the Superintendent of Insurance on *unauthorized* insurers. Even if the Court were to assume that the reference to § 59A-5-31 in the certificate suggests that Progressive Advanced is authorized, service of process under either § 59A-5-31 or § 38-1-8, without more, is insufficient to establish personal jurisdiction. This is because "[s]ervice can be made on a party within the territorial confines of a court's jurisdiction, yet exercise of personal jurisdiction based on such service can contravene due process because of a lack of sufficient minimum contacts with the court's jurisdictional territory." *Quinones v. Pennsylvania Gen. Ins. Co.*, 804 F.2d 1167, 1178 n.7 (10th Cir. 1986). Thus, "[a]n Unauthorized Insurer's Process Law (UIPL), [like § 59A-5-31] under which the acts of an unauthorized insurer constitute an appointment of the state Insurance Commissioner or other specified state official as its agent for service of process, does not afford a basis for in personam jurisdiction independent of the due process requirement of minimum contacts with the forum state." 16 Steven Plitt, *et al.*, Couch on Ins. § 228:24. "[I]n addition to satisfying the UIPL, a nonresident, unauthorized insurer's activities in a foreign state must constitute sufficient contacts such

that maintenance of the lawsuit does not offend the 'traditional notions of fair play and substantial justice.'" *Id.*

In sum, Plaintiffs have not met their burden to demonstrate that Progressive Advanced has contacts with New Mexico independent of its parent corporations sufficient to subject it to jurisdiction here.  Defendants' *Motion* will be granted.  Given the disposition of this issue, there is no need to address Defendants' arguments as to whether Arizona or New Mexico law applies, or whether Arizona recognizes as third-party claim against an insurer.  [Doc. 13, pg. 10-11]

## III.    Conclusion

For the foregoing reasons, the Court **DENIES in part** and **GRANTS in part** *Defendants' Motion to Deny the Joinder of Jurisdiction Defeating Defendants and to Strike Plaintiffs' Improperly Filed First Amended Complaint* [Doc. 12].  Specifically, the Court **DENIES** the *Motion to Strike Plaintiffs' Improperly Filed First Amended Complaint* and **GRANTS** the *Motion to Deny Joinder of Jurisdiction Defeating Defendants*.

Further, the Court **GRANTS** *Defendants' Motion to Dismiss for Lack of Personal Jurisdiction* [Doc. 5].

**SO ORDERED this 17th day of July, 2017.**


_____
**M. CHRISTINA ARMIJO**
**Chief United States District Judge**